BALDOCK, Circuit Judge,
dissenting as to Part IV.
I do not agree that the punitive damage award in this case is constitutionally impermissible.[1] In Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the Court upheld an Alabama state court’s punitive damages award four times greater than the actual damage award. The Court stated, however: “We need not, and indeed cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every ease.” Id. at 18, 111 S.Ct. at 1043. Nevertheless, this court attempts to do just that.
Illustrating the difficulty in drawing any clear lines, in TXO Production Corp. v. Alliance Resources Corp., 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) (plurality), the *865 Court upheld a punitive damage award of $10,000,000 and an actual damage award of $19,000 — a ratio of 526 to 1. Rejecting TXO’s argument that the punitive damage award was grossly excessive, the Court stated that a fact finder “imposing a punitive damage award must make a qualitative assessment based on a host of facts and circumstances unique to the particular case before it. Because no two cases are truly identical, meaningful comparisons of such awards are difficult to make.” Id. at 457, 113 S.Ct. at 2720. Thus, from TXO we must take the lesson that a punitive damage award of over 500 times actual damages is not per se unconstitutional, and that the propriety of a punitive damage award requires a very fact specific, case by case analysis.
In 1996, the Supreme Court decided BMW of North America, Inc. v. Gore,—U.S.-, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). The Court, in a 5 to 4 decision, reversed and remanded a $2,000,000 punitive damage award 500 times greater than the actual damage award of $4,000 against BMW. In so doing, the Court attempted to provide some guidelines for determining when a punitive damage award runs afoul of due process as “grossly excessive.” The Court first explained that any sanction the state imposes upon a tortfeasor must be designed to protect its own consumers and economy, rather than the consumers and economies of other states. Id. at-, 116 S.Ct. at 1597. Second, the tortfeasor must have fair notice that the subject conduct may give rise to punitive measures. Id. at -, 116 S.Ct. at 1598. Third, the tortfeasor must have fair notice as to the potential magnitude of such measures. Under the third guideline, the Court identified three guideposts: (1) the degree of reprehensibility of the tortfeasor’s conduct; (2) the disparity between the harm or potential harm and the punitive damage award; and (3) the difference between the punitive damage award and the authorized civil penalties. Id. The Court, however, again rejected the notion of a categorical approach applicable to all cases:
Of course, we have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula. ... It is appropriate, therefore, to reiterate our rejection of a categorical approach. Once again, “we return to what we said ... in Haslip: We need not, and indeed cannot, draw a mathematical bright line between the constitutionally acceptable and constitutionally unacceptable that would fit every ease....’” TXO, 509 U.S. at 458, 113 S.Ct. at 2720 (quoting Haslip, 499 U.S. at 18, 111 S.Ct. at 1043). In most cases, the ratio will be within a constitutionally acceptable range, and remittitur will not be justified on this basis.
Id. at---, 116 S.Ct. at 1602-03 (emphasis added).
In this case NationsBank does not assert, and has no basis for asserting, that the district court sought to protect other than Oklahoma interests in awarding punitive damages. Nor does NationsBank argue that it did not have fair notice that fraudulent conduct in Oklahoma might give rise to punitive measures. See Continental Trend Resources, Inc. v. OXY USA Inc., 101 F.3d 634, 638 (10th Cir.1996) (“It has long been established in Oklahoma ... that tortious behavior that is particularly egregious will warrant punitive damages.”), cert. denied,—U.S. -, 117 S.Ct. 1846, 137 L.Ed.2d 1049 (1997). Instead, NationsBank’s principle argument, which the court accepts, is that the district court’s punitive damage award is “grossly excessive,” because the award is twenty-seven times greater than the $44,000 actual damage award.[2] I disagree.
In BMW, the Court focused on the degree of reprehensibility of the tortfeasor’s conduct as “[pjerhaps the most important indicium of the reasonableness of a punitive damage award.” The Court noted that deceit is more reprehensible than negligence and that “infliction of economic injury, especially when done intentionally through affirmative acts of misconduct, ... or when the target is financially vulnerable, can warrant a substantial penalty.” BMW, — U.S. at-, 116 S.Ct. at 1599. Similar concerns are echoed in *866 TXO. See TXO, 509 U.S. at 462, 113 S.Ct. at 2722-23. In this ease, the district court found that NationsBank, through Warren, had intentionally deceived the Hamiltons, knowing that they were financially vulnerable. Aplt.Supp.App. at 896-99. Compare BMW,—U.S. at-, 116 S.Ct. at 1601 (“[T]he record in this case discloses no deliberate false statements, acts of affirmative conduct, or concealment of evidence of improper motive.... ”), with TXO, 509 U.S. at 462, 113 S.Ct. at 2722-23 (stating large punitive damage award was supported by tortfeasor’s “fraud, trickery and deceit”). As we previously have said, the record supports these findings.
The court states that in cases of purely economic injury, the ratio of punitive damages to actual harm cannot exceed 10 to 1. Aside from the fact that the language of the Constitution contains no support for this conclusion and Supreme Court precedent specifically refuses to prescribe rigid mathematical ratios,[3] this case is much more than one of purely economic injury. Sandra Hamilton testified that, among other problems, she had no heat in the house for two winters, electrical units in the house repeatedly shorted out, an electric shock threw her across the bathroom, and the house was infested with scorpions and wasps. Aple.App. at 89-90. I wonder whether it would make any difference to this court if the Hamiltons had caught pneumonia, been electrocuted, or seriously stung. Does a substantial award of punitive damages require that we await such a tragic occurrence? Surely hot! A punitive damage award should be based on exposure to harm rather than actual harm. Nations-Bank’s wanton conduct exposed the Hamiltons and anyone else on the property to an unwarranted risk of personal injury. It is not due to the Bank’s conduct that nobody was personally injured. The court’s conclusion that NationsBank’s conduct posed no threat to the health or safety of the Hamiltons cannot be taken seriously.
Moreover, we must not forget the punitive nature of punitive damages. The wealth of the tortfeasor remains a relevant and important consideration in determining the propriety of a punitive damage award. TXO, 509 U.S. at 464,113 S.Ct. at 2723-24; OXY USA, 101 F.3d at 641. The record indicates that NationsBank’s net worth is in excess of $8.7 billion. Aplt.App. Vol III at 689. A $1,200,-000 award represents only 14/1000 of one percent of NationsBank’s net worth. I conclude that the degree of reprehensibility of NationsBank’s conduct, the degree of difficulty in estimating the Hamiltons’ actual damages,[4] and NationsBank’s significant worth are sufficient to justify the district court’s punitive damage award against NationsBank. I would affirm the judgment of the district court in all respects.

. As an initial matter, I do not believe that we need reach the issue of the punitive damage award’s excessiveness under the Federal Constitution. Footnote three of the court’s opinion plainly states that the award is excessive under Oklahoma law. Why then do we need to determine that the award is also excessive under the Federal Constitution? See Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable.”).

. NationsBank also continues to assert that the evidence does not support the district court’s finding of fraud, which in turn cannot support the court’s award of punitive damages. The insufficiency of the evidence, however, is a proposition we have rejected throughout the opinion.

. I view the recent trend in the federal courts setting arbitrary ratios to decide the constitutionality of punitive damage awards as unwarranted conservative judicial activism — perhaps a lesser known evil than, but every bit as menacing as, its first cousin liberal judicial activism. If a court's construction of the purportedly applicable constitutional provision, here the Due Process Clause of the Fourteenth Amendment, has no support in its text or history, it is difficult to apply and yields unprincipled results. See generally Wechsler, Toward Neutral Principles of Constitutional Law, 73 Harv.L.Rev. 1 (1959).

. In part IV of the opinion, the court states that “there do not appear to be any 'hard to detect' elements of the Hamiltons’ damages, as the $44,-000.00 actual damage award reflects the costs incurred by the Hamiltons in relying on the bank's promise to perform the repairs.” This statement is directly contrary to the district court’s conclusion that standard damage calculations in this case would not adequately compensate the Hamiltons for the damages they incurred. Aplt.App. Vol I at 45-A, 3-4.